UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BREANNA N.,<br><br>        Plaintiff,<br><br>    v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 2:23-cv-01658-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 5. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 3, Complaint.

On July 14, 2020, plaintiff filed an application for SSI and DIB alleging a disability onset date of January 1, 2015. AR 303, 310. The claims were denied initially and on reconsideration. AR 176, 179. On June 28, 2022, a hearing was conducted by Administrative Law Judge (ALJ) Cecelia LaCara. AR 53-82.

A non-attorney representative assisted plaintiff at the hearing. AR 56. On August 19, 2022 the ALJ issued a decision finding plaintiff not to be disabled. AR 21-45. On August 29, 2023 the Appeals Council declined the request for review. AR 1-4.

1

The ALJ found plaintiff had the following severe impairments: Osteoarthritis, Fibromyalgia, Depression, Circulatory and Gastrointestinal System, and Ehler's Danlos Syndrome. AR 26. The ALJ found plaintiff had the Residual Functional Capacity (RFC) to perform light work with the following additional restrictions:

> . . . stand/walk in any combination for six hours, sitting for up to six hours in an eight hour work day, with normal breaks, frequent climbing ramps and stairs, no climbing ladders, ropes or scaffolds, frequent stooping, kneeling, crouching, and crawling. Avoid all exposures to unprotected heights and hazardous machinery, exposure to excessive industrial level vibration, avoid moderate exposures to nonweather related extreme cold or extreme heat, excessive noise (loud noise beyond office level decibels), and is to avoid moderate exposure to respiratory irritants. Work is limited to simple, routine, and repetitive tasks, with occasional contact with the public.

AR 30. At step four, the ALJ found plaintiff would not be able to perform her past work as a watch repairer. AR 44. At step five, the ALJ found plaintiff could perform the requirements of representative occupations such as: Photocopier (DOT 207.685.014), Office Helper (DOT 239.567-010), and Collator Operator (DOT 208.685-010). AR 45.

## I.   STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

II.   DISCUSSION

**A. Medical evidence**

Plaintiff challenges the ALJ's assessment of the medical opinions of Dr. Escobar and Dr. Dhiman, Dkt. 9, Opening Brief, at 13-17.

Plaintiff filed the claim on July 14, 2020 so the ALJ applied the 2017 regulations. *See* AR 303, 310. Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how they considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Court interpreted the 2017 regulations concerning medical evidence:

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.* at 791.

<u>Dr. Susana Escobar, M.D.</u>

3

  Plaintiff challenges the ALJ's assessment of Dr. Escobar's opinion on the basis that the ALJ failed to consider the nature of plaintiff's impairments, Ehlers-Danlos Syndrome and fibromyalgia, when making these findings. Dkt. 9 at 15. She also contends that the ALJ misstated the record considering plaintiff's laboratory findings and disregarded the impact that plaintiff's tachycardia had on her functioning. *Id*.

  On December 31, 2019 Dr. Escobar completed a "Physical Functional Evaluation" form. 834-36. Dr. Escobar listed plaintiff's diagnoses as Ehlers Danlos with a severity level of 4 out of 5, postural orthostatic tachycardia with a severity of 5, paroxysmal tachycardia with a severity of 5, gastroparesis with a severity of 4, and severe dental disease with a severity of 5. AR 835. She indicated that these conditions impact the following basic work activities: sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, crouching, seeing, hearing, and communicating. *Id*. She opined that plaintiff cannot walk at all due to an inability to stand, sit/walk intermittently. *Id*. She opined plaintiff cannot be around heights or hazardous chemicals. *Id*. She opined that plaintiff is severely limited and unable to meet the demands of sedentary work. AR 836. She also submitted a range of joint motion evaluation chart. AR 837-838.

  On October 18, 2021, Dr. Escobar provided a letter describing her professional contacts with plaintiff. AR 4394-95. She described several of plaintiff's symptoms associated with her conditions such as difficulty with malnutrition, periods of heart rate alternation between below normal and to above 180 when she will need to stay in bed, lower extremity weakness and recurrent falls, recurrent urinary tract infections and recurrent skin boils, antibiotic sensitivity that requires her to use IV treatment for any

type of infection, an inhibited ability to interact with people and to look for and sustain full-time employment, and an inability to live at home alone. *Id*.

The ALJ found these opinions to be not persuasive because they were not supported by Dr. Escobar's own treatment notes and the medical record. Dkt. 41.

Specifically, as for the 2021 opinion, the ALJ found that Dr. Escobar's opinion only discussed two functional limitations, plaintiff's inability to live on her own and the limited ability to interact with people or look for full time employment, and the ALJ discounted these opined limitations as vague, and found that Dr. Escobar did not set forth specific functional limitations. *Id*. The ALJ also found that Dr. Escobar's opinion was inconsistent with Dr. Escobar's treatment notes which relied mostly on plaintiff's subjective complaints. *Id*. She further found that Dr. Escobar's findings were inconsistent with the normal examination, imaging, and testing findings in the record and Dr. Dhiman's opinion. *Id*.

With respect to Dr. Escobar's 2019 opinion, the ALJ found it to be inconsistent with treatment notes; the 2019 opinion did not state any objective findings other than vague examination notes from 2015. *Id*. The ALJ also found the contemporaneous range of motion examination, which showed hyper flexibility in some areas but not others, to be inconsistent with the record as a whole which generally showed no musculoskeletal or joint abnormalities and has unremarkable imaging and laboratory findings. *Id*. at 41-42.

Plaintiff argues that the ALJ erred in evaluating her Ehlers-Danlos Syndrome and Fibromyalgia, which would not produce the kinds of findings the ALJ referred to as being problematic due to absence of any objective findings. Dkt. 9 at 15. Dr. Escobar

5

did not address Fibromyalgia in either of her submissions. Plaintiff does not cite any source to support the assertion that plaintiff's Ehler-Danlos Syndrome would not be expected to result in symptoms or limitations that the ALJ suggested would normally be present.[1] The ALJ thoroughly summarized the range of motion examination performed by Dr. Escobar in December 2019 and concluded that "while a review of this examination does show some hyper flexibility, it does not support the severity of the limitations alleged." AR 32. The ALJ also summarized normal examination findings throughout the record. AR 32-33. Accordingly, plaintiff has failed to show the ALJ's decision was not based on substantial evidence.

Plaintiff next argues that the ALJ erred in stating that laboratory findings were unremarkable. Dkt. 9 at 15. The Ninth Circuit has confirmed "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Contrary to Plaintiff's contention that the ALJ misstated the record in describing the laboratory findings as generally unremarkable, Dkt. 9 at 15, there is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Here the ALJ thoroughly summarized plaintiff's treatment record. AR 32-37.

---

[1] "Elhers-Danlos syndrome is a group of inherited disorders that affect an individual's connective tissues. . . . Diagnosis is based on extremely loose joints, fragile or stretchy skin, and sometimes genetic tests." *Katherine M. v. Comm'r of Soc. Sec.*, 2019 WL 2719717 (W.D. Wash. May 7, 2019), *report and recommendation adopted*, 2019 WL 2716161 (W.D. Wash. June 28, 2019).

1    Next, plaintiff contends that the ALJ erred by disregarding the impact that
2 plaintiff's tachycardia had on her functioning, which she argues impacted her ability to
3 walk. Dkt. 9 at 15-16. However, the ALJ discussed tests showing tachycardia in the
4 summary of the record. AR 33, 35, 36.
5    Plaintiff argues that the ALJ erred in not including the fatigue plaintiff experienced
6 due to her tachycardia which could result in her staying in bed for prolonged periods of
7 time. Dkt. 9 at 16. Yet, Dr. Escobar's statement that "[plaintiff] has weeks where she is
8 only able to stay in bed because she will feel unwell if she gets up" (AR 702) is not a
9 specific functional limitation. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
10 601 (9th Cir 1999) (ALJ did not err in determining that doctor's reports did not opine
11 specific functional limitations where doctor "did not explain *how* these characteristics
12 precluded work activity."). An ALJ may reject a physician's opinion on the ground that it
13 is not supported by objective medical findings. *Magallanes v. Bowen*, 881 F.2d 747, 754
14 (9th Cir. 1989).
15    Accordingly, the ALJ did not err in discounting Dr. Escobar's opinions.
16    <u>Dr. Nitin Paul Dhiman</u>
17    Plaintiff challenges the ALJ's assessment of Dr. Dhiman's opinion on the basis
18 that his opinion was not supported by the record as he offered no explanation as to how
19 he arrived at his conclusions. Dkt. 9 at 16-17.
20    Dr. Dhiman stated that he reviewed plaintiff's file; he testified at the hearing
21 based upon his education, experience, training, and review of the medical evidence. AR
22 58-63. He stated the plaintiff had Ehlers-Danlos Syndrome, asthma and or COPD, high
23 blood pressure, gastroparesis and a questionable seizure disorder and or neuropathy.
24
25

AR 59. He affirmed the ALJ's statement that there were many complaints in terms of possible neurological symptoms, but her doctors had not identified the cause of those issues. AR 60.

He opined that based on plaintiff's limitations she would be able to lift and carry no more than 20 pounds occasionally, 10 pounds frequently (AR 60); she would be able to sit, stand, and walk, six hours; standing and walking would be possible six hours in combination (AR 60-61); climbing ramps and stairs frequently (AR 61); stooping, kneeling, crouching, and crawling frequently. *Id*. He also opined the plaintiff had no restriction in manipulative functioning, talking, hearing, tasting, and smelling (*Id*.); she should avoid working in situations of unprotected heights and heavy machinery and vibrations and exposure to extreme heat, extreme cold, wetness, humidity, noise intensity (*Id*.) and pulmonary irritants would be occasionally. *Id*.

The ALJ found this opinion to be very persuasive because Dr. Dhiman had the opportunity to review the record, his opinion was consistent with the record as a whole, and his opinion was based on the objective evidence. AR 40-41.

Plaintiff argues that the ALJ could not have found Dr. Dhiman's opinion to be supported by the record because he did not offer a discussion of how he considered the evidence in the record in coming to his conclusion. Dkt. 9 at 17.

Here, the ALJ thoroughly summarized the record and concluded that Dr. Dhiman's opinion was consistent with it, specifically citing evidence in the record that plaintiff is routinely noted to have normal gait and station, full strength, intact sensation, and intact reflexes, laboratory findings and diagnostic testing have generally been

1 benign, and an EMG was normal. AR 41 (citing AR 443-529, 1375-1560, 839-1374,
2 1561-1629, 1630-3758, 3762-4111, 4137-4201, 4220-4308, 4416-4428, 4449-4451).

Dr. Dhiman stated that his opinion was based on his review of the record, and he offered a proper basis for discrediting Dr. Escobar's opinion based on his characterization of her letter as "'just statements' she has gathered as being [plaintiff's] primary care doctor." AR 58.  *See Andrews v. Shalala*, 53 F.1035, 1043 (9th Cir. 1995) (ALJ did not err in relying on testifying medical expert who based his opinion on review of the medical record, was consistent with written reports of four other experts and plaintiff's testimony, and offered a legitimate basis for discounting examining psychologist's opinion); *see also, Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir 1999) (ALJ did not err in determining that doctor's reports did not opine specific functional limitations where doctor "did not explain *how* these characteristics precluded work activity.").

Furthermore, as a testifying witness Dr. Dhiman was subject to cross examination and thus it was proper for the ALJ to rely on his testimony. *See Andrews v. Shalala*, 53 F. 1035, 1042 (9th Cir. 1995).

Accordingly, the ALJ did not err in finding Dr. Dhiman's opinion to be persuasive.

**B.  Plaintiff's statements regarding symptoms and limitations**

Plaintiff contends the ALJ failed to give clear and convincing reasons for rejecting her testimony. Dkt. 9, Opening Brief, at 2-13. Plaintiff asserts the ALJ did not scrupulously explore for relevant facts, and the ALJ had a duty to further develop the record because the record concerning plaintiff's limitations was ambiguous and plaintiff was not represented by an attorney. Dkt. 9 at 3-4, 6-7.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

On August 30, 2020 plaintiff completed a "Function Report – Adult" form. AR 346-353. Plaintiff indicated that she spends most days in bed and can be up for about four hours on a good day. AR 347. She wrote that her conditions affect the following abilities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, memory, completing tasks, concentration, and using hands. AR 351. She indicated that she uses a walker, wheelchair, cane, brace/splint, glasses/contact lenses, and a feeding tube. AR 352.

At the hearing, plaintiff testified that she lives with a roommate/caregiver who is paid by the state.[2] AR 64. She testified that she has not driven since 2018 or 2019, when she had an episode where she needed to relearn how to walk. *Id*. She testified that she takes NSAIDS, pain medication, antihistamine, an antidepressant, and a muscle relaxer to manage her symptoms. AR 67-68. She testified that she tries to

---

[2] In the Opening Brief, plaintiff refers to her roommate and caregiver as her aunt. Dkt. 9 at 11. During the hearing, plaintiff stated that the person who was her non-attorney representative, C.M., was also the same person who was her roommate and caregiver. AR 56, 64, 69.

10

exercise but is prohibited by her heartrate. AR 68. She indicated she spends her time resting, crafting, and researching on the internet; her roommate takes care of the cooking, cleaning, and shopping. AR 68-69.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 31. Specifically, the ALJ noted that the medical record did not support the degree of limitations (AR 31-39), her symptoms improved with medication (AR 33), and her activities of daily living "require physical and mental abilities, which are generally inconsistent with her reported functionality" (AR 39).

### Assistive devices

Plaintiff challenges the ALJ's assessment of her testimony regarding the need for assistive devices such as a wheelchair, canes, and walkers. Dkt. 9 at 4-6.

The ALJ acknowledged that plaintiff indicated that she uses a cane, walker, and wheelchair as needed but found that treatment notes throughout the record generally showed that "she ambulates independently and has a steady gate with no mention of an assistive device." AR 33 (citing AR 483, 467, 455, 565, 560, 555, 550, 2430, 2369, 2226, 1937, 1903, 1657, 3897, 3876, 4421, 4289).

Plaintiff argues that none of the treatment notes cited by the ALJ relate to situations that involved plaintiff's ability to stand or walk, and plaintiff was not doing the prolonged walking or standing that required her to use an assistive device in these situations. Dkt. 9 at 5-6.

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

Plaintiff argues that the ALJ should have made a more detailed inquiry into plaintiff's need for assistive devices. Dkt. 9 at 3. Plaintiff cites one letter (Dr. Escobar's October 21, 2021, letter) regarding her use of assistive devices such as canes and walkers, stating that plaintiff "utilizes multiple assistive devices including braces, canes, and a wheelchair when necessary." AR 4394. Plaintiff also cites various notes concerning her use of walkers and canes at home and for community outings. Dkt. 9 at 4 (citing AR 1747, 1938, 2000, 2402, 3812).

The ALJ rejected notes from Dr. Escobar indicating plaintiff needed a wheelchair, because the ALJ found that the examination findings were vague and did not set forth any relevant objective physical findings. AR 32. Plaintiff did not testify regarding the extent to which she required the assistive devices.

The ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*,

80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (citing *Driggins v. Harris*, 657 F.2d 187, 188 (9th Cir. 1981)).

If a Social Security claimant is not represented by counsel, it is incumbent on "the ALJ to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts, [and] be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Highbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (internal citations and quotations omitted). The responsibility of the ALJ to diligently develop the record is heightened where there is evidence in the record of plaintiff's mental illness, because an individual with mental illness may be unable or have immense difficulty protecting their own interests. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150-1151 (9th Cir. 2001). The ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001).

Here the ALJ did not ask any questions regarding plaintiff's need for an assistive device. Although the ALJ did not find that plaintiff's mental illnesses were severe conditions, the ALJ's decision discusses depression and anxiety at length, and concludes that plaintiff has been receiving treatment and symptoms and limitations are moderate. AR 28-30, 38-39. Dr. MacDonald opined on March 19, 2021, that plaintiff had bipolar symptoms, would have executive functioning issues with concentration, focus, as well as emotional and mood regulations issues. AR 4206. Dr. MacDonald opined that plaintiff would not be able to manage her own funds, she "would have difficulty dealing with the usual stress encountered in the workplace" but "may not have difficulty

performing simple and repetitive tasks". AR 4205. Plaintiff's mental health symptoms and limitations are included in the RFC (AR 30, "[w]ork is limited to simple, routine, and repetitive tasks, with occasional contact with the public."). Dr. Luci Carstens, Ph.D., also opined in March 2020 (AR 798-806), that plaintiff had marked impairments in several areas of functioning and would be impaired for at least 24 months with available treatment. AR 801-802. Significantly, among the areas of functioning that Dr. Carstens noted was markedly impaired were plaintiff's abilities to "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision," and "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms." AR 801.

     Dr. MacDonald's and Dr. Carsten's assessments, and the opined symptoms and limitations found by Dr. MacDonald and Dr. Carsten, should have alerted the ALJ that having no attorney to represent her in the hearing put plaintiff at a serious disadvantage. *Tonapetyan v. Halter,* 242 F.3d at 1150-1151. The non-attorney representative attempted to inquire of Dr. Dhiman during the video conference call (AR 55-57, 61-63), but the ALJ told the personal representative she was out-of-bounds when the personal representative struggled to ask appropriate questions. AR 62-63.

     In response to the non-attorney representative's attempted questions, Dr. Dhiman stated that he could not fully review and comment on the opinions of and medical records of plaintiff's examinations and treatment with Dr. Escobar. AR 62 (Dr. Dhiman states, "I don't really have an opinion on other doctor's opinion without consulting with them first. . ."; and when asked about symptoms, "[Dr.Escobar] does list certain, you know, symptoms that she's been having, you know, cardiovascularly and

14

then some infections and so forth and neurologically but I kind of like to stick with the objective evidence.").

The medical record shows documentation that plaintiff required a wheelchair for standing or walking. *See* AR 2428. Additionally, plaintiff and Dr. Escobar both indicated that plaintiff needed to use a wheelchair or other assistive devices. *See* AR 352, 4394. Yet, the record does not clearly indicate the circumstances when a wheelchair would be necessary. Considering that plaintiff was unrepresented by counsel in the hearing, the ALJ should have inquired into plaintiff's need for an assistive device to determine what circumstances may have necessitated the need for such a device before discounting her statements. The failure to do so was error. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068-69 (9th Cir. 2006)

<u>Absences</u>

Plaintiff challenges the ALJ's failure to acknowledge plaintiff's statements about trips to the emergency room and hospitalizations. Dkt. 9 at 6. As support for this argument, plaintiff cites records where she presented to urgent care, and where she was hospitalized for various lengths of time. *Id*. at 6-7. Specifically, plaintiff asserts that between March 2015 and August 2021 she presented to urgent care 54 times; and between June 2016 and October 2021 she was hospitalized on 20 occasions. Dkt. 9 at 6. These hospitalizations ranged from overnight to ten days. *Id*. at 6-7.

Plaintiff has presented evidence of ambiguity in the record; and there is evidence in the record (as discussed above) that plaintiff had mental health conditions that compromised her ability to participate meaningfully in the hearing without having the assistance of a lawyer. There was ambiguity concerning evidence that the ALJ had a

15

duty to address: "frequency of her medical appointments may inhibit her ability to work on a 'regular and continuing basis.'" *Bourcier v. Saul*, 856 Fed. Appx. 687, 691 (9th Cir. 2021) (unpublished) (quoting Social Security ruling 96-8p).

In *Bourcier*, the Ninth Circuit held that, on remand the ALJ should consider "the need to schedule all appointments during the workweek or workday, the need to miss an entire workday for each appointment, and whether the need for this number of appointments is ongoing. *Id*.

The holding in *Bourcier* would be relevant to this case because, during a five-year period, plaintiff was hospitalized 20 times. Dkt. 9, Opening Brief, at 6, n.2. As an example of the type of medical problem plaintiff presented when going for emergency treatment or hospitalization, plaintiff had recurring sepsis during 2019 and was hospitalized in the summer of 2019; Dr. Escobar characterized (in July 2019 notes) the sepsis as a medical emergency secondary to extreme dental decay (notes indicate plaintiff had a phobia of going for dental work, also could not find a dentist that would accept her insurance). AR 652, 659, 672-691. Plaintiff received medical intervention to address the sepsis during numerous medical appointments in 2019, including a feeding tube for nutrition and hydration. AR 672, 684. Although sepsis is not listed among the conditions, symptoms, or limitations that the ALJ included in the RFC, and sepsis was not mentioned at all by Dr. Dhiman, AR 62 (Dr. Dhiman mentions that there were "some infections"), the time spent by plaintiff obtaining evaluation and treatment for infections and sepsis during 2019 was substantial.

The present case is distinct from the cases cited by defendant, *Curtiss v. Kijakazi*, No. 22-35371, 2023 WL 3918687 (9th Cir. June 9, 2023), and *Goodman v.*

1 *Berryhill*, No. C17-5115 BAT, 2017 WL 4265685 (W.D. Wash. Sept. 25, 2017). In
2 *Curtiss*, the plaintiff worked for three months as a cashier and terminated her
3 employment for reasons unrelated to her conditions or her need to miss work to attend
4 appointments. *Curtiss*, at *2. Similarly, in *Goodman*, the plaintiff left his job for a reason
5 unrelated to his impairments and his own testimony contradicted his statement that the
6 frequency of his medical appointments precluded employment. *Goodman*, at *3.
7 Furthermore, in both of these cases, the court addressed scheduled appointments, not
8 urgent care visits or hospitalizations as was the case here.

9      Here the Vocational Expert testified that unscheduled absences in excess of 16
10 hours a month would not be tolerated by any employer. AR 79. The ALJ noted that
11 "[t]he record shows multiple admissions due to sepsis related to line infection" (AR 35),
12 but there is no indication that she considered the frequency or duration of these
13 admissions in formulating the RFC; nor did the ALJ asked plaintiff or the Vocational
14 Expert about this during the hearing.

15      The ALJ had a duty to develop the record concerning plaintiff's absences from
16 work that would be associated with medical appointments for urgent care, and
17 hospitalizations; failing to resolve this ambiguity was error because the ALJ apparently
18 did not consider absences and time away from work due to medical evaluation and
19 treatment, in formulating the RFC.

20      <u>Harmless Error</u>
21      An error that is inconsequential to the non-disability determination is harmless.
22 *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors of
23 the ALJ result in a residual functional capacity (RFC) that does not include relevant

work-related limitations, the RFC is deficient and the error is not harmless. *Id; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

Here, as stated above, the Vocational Expert testified that absences in excess of 16 hours per month would preclude employment. AR 79. Additionally, the ALJ did not ask the ALJ about the use of assistive devices for walking or standing, but limited plaintiff to standing and walking in any combination for six hours a day and sitting for up to six hours in an eight hour workday. AR 76. Had the ALJ included these limitations in the hypothetical to the V.E., it may have resulted in a more restrictive RFC. Therefore, the error in failing to include these limitations was not harmless.

Additional Arguments

Plaintiff also challenges the ALJ's assessment of her testimony based on the medical record and her activities of daily living. However, the Court has already determined that the ALJ committed harmful error and that plaintiff's testimony should be reviewed anew. On remand, the ALJ would be required to review the medical record and activities of daily living in conjunction with the de novo hearing and reweigh the evidence during the five-step review.

**C. Remand for additional proceedings**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should

remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks the Court to remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's statements about symptoms and limitations. The Court has found harmful errors in the ALJ's evaluation of plaintiff's statements about symptoms and limitations. Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts and ambiguity. Therefore, this matter should be reversed for further administrative proceedings, including a *de novo* hearing, not with a direction to award benefits.

III.   CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 25th day of September, 2024.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge